IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 18-mc-00051-MSK-KLM

UNITED STATES OF AMERICA,

        Petitioner,

        v.

RAJARAM K. MATKARI,

        Respondent.

---

## UNITED STATES' REPLY TO RESPONSE TO ORDER TO SHOW CAUSE REGARDING THE PETITION TO ENFORCE IRS SUMMONS

---

The United States of America ("United States"), by and through undersigned counsel,

hereby submits its Reply to Rajaram K. Matkari's Response to Order to Show Cause Regarding

Government's Petition to Enforce IRS Summons, that was filed on August 13, 2018

("Response"). Dkt. No. 14[1]. In support of its Reply, the United States provides as follows:

### INTRODUCTION

### I.    THE SUMMONS AND PETITION

On February 27, 2018, the Internal Revenue Service ("IRS") issued an administrative

summons to Mr. Matkari, directing him to produce for examination certain books, papers,

---

[1] It should be noted that the Court's Minute Orders granting Respondent's motions for extension of time to respond to the Petition do not provide for a timeline for replies to be filed. Dkt. Nos. 9, 13. However, the Court's original order to show cause, entered on May 21, 2018, allowed the United States 14 days from the filing of a response to submit a reply. Dkt. No. 6. As such, the United States' reply is timely.

records, and other data described in the Summons, including records of foreign bank account records that 31 C.F.R. § 1010.420 required Mr. Matkari to keep; and appear for testimony on March 12, 2018. Dkt. No. 1, at ¶ 5; Dkt. No. 1-2, at pp. 9-14. The Summons was issued pursuant to an examination conducted by the IRS for the purpose of determining Mr. Matkari's income tax liabilities for the taxable years 2011 through 2014, and whether the IRS should assess penalties against Mr. Matkari for his failure to report his interest in foreign bank accounts. Dkt. No. 1, at ¶ 4; Dkt. No. 1-2, at ¶¶ 4-11.

After Mr. Matkari failed to appear before the IRS at the designated time and place, and failed to produce the documents requested in the Summons, on March 23, 2018, the United States commenced this action, seeking to enforce the IRS Summons. Dkt. No. 1.

## II.    THE RESPONSE

In his Response, Mr. Matkari argues that by requiring him to produce records of his foreign financial accounts, the Summons and 31 C.F.R. § 1010.420 implicate his Fifth Amendment Act of Production. Dkt. No. 14, at p. 3. He then correctly points out that while the Tenth Circuit has yet to address the issue of whether the "required records exception" applies in this situation, various Circuit Court have ruled that it does. *Id.* In his Response, Mr. Matkari goes into detail about why the required records exception to the Fifth Amendment right against self incrimination does not apply here. Mr. Matkari is mistaken.

## ARGUMENT

## I.    THE BANK SECRECY ACT

The Currency and Foreign Transactions Reporting Act of 1970, Pub.L. 91–508, 84 Stat. 1118 (1970), is generally referred to as the Bank Secrecy Act ("BSA"). 31 U.S.C. § 5311

provides that the BSA's purpose is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings…". 31 U.S.C. 5314(a) provides in relevant part that the Secretary of the Treasury must require U.S. citizens and residents, as well as any person doing business in the United States, to "keep records and file reports" regarding their foreign financial transactions and relationships.

31 C.F.R. § 1010.350(a) provides for such reporting requirements and states in relevant part:

> Each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country shall report such relationship to the Commissioner of Internal Revenue for each year in which such relationship exists and shall provide such information as shall be specified in a reporting form prescribed under 31 U.S.C. 5314 to be filed by such persons. The form prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts (TD–F 90–22.1), or any successor form[2].

31 C.F.R. § 1010.420 requires that records of accounts that must be reported under § 1010.350, shall be retained by each person having a financial interest in or signature or other authority over any such account, for a period of 5 years, and shall be kept at all times available for inspection as authorized by law. The records tha t must be kept in this manner include the name in which each such account is maintained, the number or other designation of such account, the name and address of the foreign bank or other person with whom such account is maintained, the type of such account, and the maximum value of each such account during the reporting period.

## II.   FIFTH AMENDMENT AND ACT OF PRODUCTION PRIVILEGE IN GENERAL

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal

---

[2] In 2013, Form TD 90-22.1 was replaced by FinCEN Form 114, Report of Foreign Bank and Financial Accounts (FBAR).

3

case to be a witness against himself." U.S. Const. Amend. V. It "does not independently proscribe the compelled production of every sort of incriminating evidence but applies only when the accused is compelled to make a [t]estimonial [c]ommunication that is incriminating." *Fisher v. United States*, 425 U.S. 391, 408 (1976). The burden of establishing that a communication is testimonial, incriminating, and compelled falls on the individual asserting the privilege. *United States v. Hubbell*, 167 F.3d 552, 567 (D.C. Cir. 1999), *aff 'd*, 530 U.S. 27 (2000); *United States v. Fox*, 721 F.2d 32, 40 (2d Cir. 1983).

With respect to requests for documents, the contents of documents are not protected by the Fifth Amendment, but in some circumstances the act of producing them may be. *Fisher*, 425 U.S. at 409-10. The production of documents in response to a summons or subpoena may be privileged where it is "the equivalent of forced testimony as to the existence, unlawful possession, and/or authenticity of the documents, as well as a belief that the produced documents matched those requested by the subpoena." *In re Three Grand Jury Subpoenas Duces Tecum Dated January 29, 1999*, 191 F.3d 173, 176 (2d Cir. 1999). However, "the privilege cannot be invoked merely because the subpoenaed items contain incriminating information; the act of production must communicate and incriminate." *Hubbell*, 167 F.3d at 581.

### A.  THE REQUIRED RECORDS EXCEPTION

The "required records" exception to the Fifth Amendment applies to the disclosure of documents that the Government requires persons in a regulated industry to maintain. *See generally In re Grand Jury Proceedings*, 601 F.2d 162, 168 (5th Cir. 1979). There are several reasons for this rule, notably that "the public interest in obtaining such information outweighs the private interest opposing disclosure and the further rationale that such records become

4

tantamount to public records." *Id.* (internal citations omitted).  Additionally, courts have held

that production of such records is "in a sense consented to as a condition of being able to carry

on the regulated activity involved." *Id.* at 171.

　　The Supreme Court first recognized the required-records exception in *Shapiro v. United*

*States*, 335 U.S. 1 (1948), and formulated the standards for the exception in *Grosso v. United*

*States*, 390 U.S. 62, 67-68 (1968):

> The premises of the doctrine, as it is described in *Shapiro,* are evidently three: first, the
> purposes of the United States' inquiry must be essentially regulatory; second, information
> is to be obtained by requiring the preservation of records of a kind which the regulated
> party has customarily kept; and third, the records themselves must have assumed "public
> aspects" which render them at least analogous to public documents.

This formulation of the rule has become a three-part test that courts generally apply to

determine whether the required-records exception applies.  *See generally In re Grand Jury*

*Subpoena*, 21 F.3d 226, 228 (8th Cir. 1994).

　　Applying the *Grosso* test, eight Courts of Appeals have held that the required-records

doctrine applies to grand jury subpoenas or to IRS administrative summonses demanding the

same basic account records at issue in this case. *United States v. Zhong H. Chen,* 815 F.3d 72

(1st Cir. 2016); *United States v. Chabot*, 793 F.3d 338 (3d Cir. 2015); *In re Grand Jury*

*Subpoena Dated February 2, 2012*, 741 F.3d 339, 347 (2d Cir. 2013); *United States v. Under*

*Seal,* 737 F.3d 330, (4th Cir.2013); *In re Grand Jury Proceedings, No. 4–10,* 707 F.3d 1262

(11th Cir.2013); *In re Grand Jury Subpoena,* 696 F.3d 428 (5th Cir.2012); *In re Special*

*February 2011–1 Grand Jury Subpoena Dated September 12, 2011,* 691 F.3d 903 (7th

Cir.2012), *cert. denied*, 133 S. Ct. 2338 (2013); *In re M.H.,* 648 F.3d 1067 (9th Cir.2011), *cert.*

*denied*, 133 S. Ct. 26 (2012).

　　It should be noted, that the Seventh Circuit has held that "[a] statute that merely requires a

taxpayer to maintain records necessary to determine his liability for personal income tax is not

within the scope of the required-records doctrine." *Smith v. Richert*, 35 F.3d 300, 303 (7th Cir. 1994) (addressing Indiana tax statute); *accord United States v. Porter*, 711 F.2d 1397, 1404-05 (7th Cir. 1983) (making the same ruling with respect to the records-maintenance requirement in Treas. Reg. §1.6001-1(a)). However, in *In re M.H.*, the Ninth Circuit harmonized *Smith v. Richert* with its holding that the required-records exception applied to documents required to be kept under the BSA, chiefly on the ground that an individual voluntarily chooses to participate in offshore banking activities (with its attendant heavy regulation), whereas "the decision to become a taxpayer cannot be thought voluntary." *Id.* at 1078 (quoting *Smith v. Richert*). *Accord In re Special February 2011-1 Grand Jury Subpoena Dated September 12, 2011*, 691 F.3d at 908-09.

As demonstrated below, the required records exception applies in this case.

### i. Essentially Regulatory Purpose

The first *Grosso* prong asks whether the record requirement is "essentially regulatory." *Grosso,* 390 U.S. at 68. This precludes Congress from circumventing the Fifth Amendment privilege by enacting comprehensive legislation "directed at a 'selective group inherently suspect of criminal activities.'" *Marchetti,* 390 U.S. at 57 (quoting *Albertson v. Subversive Activities Control Bd.,* 382 U.S. 70, 79 (1965)). This requirement is satisfied here.

Courts have looked at what and whom 31 C.F.R. § 1010.420 targets, and whether the recordkeeping scheme targets an inherently criminal activity and/or an inherently suspicious class of persons, and have concluded that it targets those engaged in the lawful activity of owning a foreign bank account, and that there "is nothing inherently illegal about having or being a beneficiary of an offshore foreign bank account, owners of these accounts are not 'inherently suspect.'" *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at 347-348; *U.S.*

6

*v. Chabot*, 793 F.3d at 345; *In Re M.H.,* 648 F.3d at 1075-76. "[T]he [Bank Secrecy Act]'s record-keeping requirements do not apply exclusively to those engaged in criminal activity." *In re Grand Jury Subpoena,* 696 F.3d at 435; *United States v. Under Seal*, 737 F.3d at 336.

In his Response, Mr. Matkari goes to great lengths to try and argue that 31 C.F.R. § 1010.420 is a record keeping scheme with essentially a criminal purpose. Dkt. No. 14, at pp. 11, 13, 14. However, as demonstrated below, all the arguments that Mr. Matkari raises in support of his contentions are without merit, the first prong of the *Grosso* is satisfied, and 31 C.F.R. § 1010.420 and the Summons at issue in this case have a regulatory purpose.

### a.   The Language of 31 U.S.C. § 5311 and Legislative History

In support of his argument, Mr. Matkari addresses the language of 31 U.S.C. § 5311, defining the purpose of the BSA to "require certain reports or records where they have a high degree of usefulness in *criminal*, tax, or regulatory investigations or proceedings…" *(emphasis added).* Mr. Matkari seems to argue that because "criminal" is listed first, it makes it the primary purpose of the BSA. Dkt. No. 14, at 14-15. Mr. Matkari then also goes into a discussion of the legislative history of the BSA, arguing that "[t]he requirements of the BSA were expressly conceived to assist criminal law enforcement agencies in targeting persons owning secret foreign bank accounts." Dkt. No. 14, at 17-19. He seems to assert that this makes the BSA criminal in purpose, rather than essentially regulatory. However, the language of 31 U.S.C. § 5311 and the legislative history do not support Mr. Matkari's arguments, and his arguments are without merit.

In fact, the Supreme Court in *California Bankers Ass'n v. Shultz,* 416 U.S. 21, 76–77 (1974), considered such arguments and rejected them as far as they apply to the BSA generally. *Id.*, at 76-77 ("While, as we have noted, *Congress seems to have been equally concerned with civil liability* which might go undetected by reason of transactions of the type required to be

7

recorded or reported, concern for the enforcement of the criminal law was undoubtedly prominent in the minds of the legislators who considered the Act.") *(emphasis added)*. The Supreme Court in *California Bankers Ass'n v. Shultz* concluded that "the fact that a legislative enactment manifests a concern for the enforcement of the criminal law does not cast any generalized pall of constitutional suspicion over it." *Id.* at 77.

Various Courts of Appeals have also addressed these arguments. *See In re M.H.*, 648 F.3d at 1074 ("Therefore, that Congress aimed to use the BSA as a tool to combat certain criminal activity is insufficient to render the BSA essentially criminal as opposed to essentially regulatory."); *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F. 3d at 348 ("This multifaceted statute clearly contributes to civil and intelligence efforts wholly unrelated to any criminal purpose."); *In re Grand Jury Proceedings, No. 4*-10, 707 F. 3d at 1271 ("Furthermore, violations of the BSA can be enforced by civil or criminal means, and Congress emphasized that the availability of civil sanctions is 'of great importance in assuring compliance with regulations of the type contemplated by [the BSA]'… Even ignoring the non-criminal purposes of the BSA, the question is not whether Congress was subjectively concerned about crime when enacting the BSA's recordkeeping and reporting provisions, but rather whether these requirements apply exclusively or almost exclusively to people engaged in criminal activity." (internal citations omitted)); *United States v. Zhong H. Chen,* 815 F.3d at 76 ("…Nonetheless, rooting out criminal activity was not Congress's only interest, and the justifications for the BSA's reporting and recordkeeping requirements extend far beyond the criminal context. *Merely looking at the text of the statute proves that its purposes are diverse …* And to the extent one looks at legislative history, it confirms this view." *(emphasis added)*); *In re Grand Jury Subpoena,* 696 F.3d at 434–35 ("the Treasury Department shares the information it collects pursuant to the Act's

requirements with other agencies … none of which are empowered to bring criminal

prosecutions." (internal citations omitted)).

When addressing the language of the statutes and regulations, Mr. Matkari also points out

that 31 C.F.R. § 1010.420 contains a 5 year record requirement, which coincides with the

criminal statute of limitations for willfully failing to file an FBAR (18 U.S.C. § 3282), rather

than the three-year statute of limitations for civil tax adjustments contained 26 U.S.C. § 6501. He

then avers that this means the statute's purpose is criminal. Dkt. No. 14, at 15-16. Mr. Matkari

does not address the fact that the three year statute of limitations for civil tax adjustments under

26 U.S.C. § 6501 is three years after the return was filed, and the fact that the period for

assessment does not begin to run until the return is filed. Mr. Matkari also ignores the exceptions

to § 6501(a), that specifically provide that assessments can be done at any time in the event of a

fraudulent return, willful attempt to evade tax, or if no return has been filed. 26 U.S.C. § 6501(c).

Finally, he also ignores 26 U.S.C. § 6501(e) that provides that in situations involving substantial

omission of items, assessments can be done within 6 years after the return was filed. Therefore,

Mr. Matkari's empty comparison of the provisions, that is unsupported by any facts or law, is

improper and incomplete, and should be summarily denied.

As discussed above, Courts have interpreted the legislative history of the applicable

statute and regulations, and concluded that the purpose was not merely criminal, but rather had a

regulatory purpose. As such, Mr. Matkari's argument that the plain language of the statute or the

legislative history somehow prove that the purpose is criminal, rather than regulatory, is

meritless and should be denied.

### b.  FinCEN's Administration of the Regulations

Mr. Matkari argues that the fact that the regulations at issue are administered by the

Financial Crimes Enforcement Network (FinCEN) implies that 31 C.F.R. § 1010.420 is part of a statutory scheme aimed at law enforcement, thus presumably showing that the regulation has a criminal purpose. Dkt. No. 14, at 16-17. This argument is too, without merit.

The Third Circuit had previously addressed this issue and concluded that "Just because some of these things have criminal aspects does not mean that § 1010.420's purpose is essentially criminal." *United States v. Chabot,* 793 F.3d at 346–47; *see also U.S. v. Under Seal,* 737 F.3d at 334-36. As such, Mr. Matkari's argument must fail.

### c.   Revenue Agent Styron

Finally, in support of his argument that 31 C.F.R. § 1010.420 does not have an essentially regulatory purpose, but rather a criminal purpose, Mr. Matkari provides a bare unsupported statement (that is prefaced by "upon information and belief"), that Heather Styron, the Revenue Agent assigned to the case, is a "Special Enforcement Program (SEP) employee … likely works for IRS-CI in a supporting role more than many other Revenue Agents, and IRS-CI is officially committed to criminal enforcement of the BSA." Dkt. No. 14, at pp. 20-21. This argument is not only speculative and not supported by any evidence, but is also irrelevant, and should be summarily denied.

### ii.   Customarily Kept

The second *Grosso* prong requires that the regulated "information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept." *Grosso,* 390 U.S. at 68. This requirement is satisfied here.

Several Courts of Appeals found the requirement that records be customarily kept is

easily satisfied in 31 C.F.R. § 1010.420[3]. 31 C.F.R. § 1010.420 mandates that owners and beneficiaries of foreign accounts keep the following information accessible for five years: (1) the name on the account, (2) the account number, (3) the name and address of the bank or person with whom the account is maintained, (4) the account type, and (5) the maximum annual account value. The Ninth Circuit has held that the foreign financial account information required to be kept under 31 C.F.R. § 1010.420 is "basic account information that bank customers would customarily keep, in part because they must report it to the IRS every year as part of the IRS's regulation of offshore banking, and in part because they need the information to access their foreign bank accounts." *In re M.H.,* 648 F.3d at 1076. The Third Circuit provided that "Common sense tells us that this is all information that an accountholder needs in order to access funds located abroad or at home. Because reasonable accountholders would retain this information in order to readily access their foreign accounts, we conclude that these are records that accountholders customarily would keep. *United States v. Chabot,* 793 F.3d at 347 (citing to *In re M.H., 648 F. 3d at 1076; In Re Grand Jury Subpoena Dated February 2, 2012,* 741 F.3d at 350; *In re Grand Jury Subpoena,* 696 F.3d at 435)); *see also In re Grand Jury Proceedings, No. 4-10,* 707 F.3d at 1272 ("Simply put, the [] argument that these records are not "customarily kept" is a non-starter.").

Mr. Matkari argues that the second prong of *Grosso* was not satisfied in this case.  In support of his argument, Mr. Matkari provides that the regulation under 31 C.F.R. § 1010.420 requires individuals to maintain records longer than the period of limitations prescribed in 26

---

[3] It should be noted that not all courts of appeals have treated this factor as a requirement of the doctrine. *See, e.g., United States v. Garcia- Cordero,* 610 F.3d 613, 616-17 (11th Cir. 2010) (discussing and applying the required-records doctrine but not using the phrase "customarily kept" or any equivalent); *In re Grand Jury Proceedings (McCoy and Sussman),* 601 F.2d 162,168 (5th Cir. 1979) (same).

U.S.C. § 6501, relating to tax assessments. He also provides that because banks in jurisdictions where individuals would have foreign accounts, are "notorious for failing to provide their customers with records…" individuals regulated by 31 C.F.R. § 1010.420 would often not possess, much less maintain, such records. Dkt. No. 21-22. These arguments are without merit.

First, 26 U.S.C. § 6501 is part of Title 26 of the United States' Code, the Internal Revenue Code, and the section specifically provides for limitations on assessment and collection. 31 C.F.R. § 1010.420 is part of Title 31 of the United States' Code, Money and Finance. As discussed above, Mr. Matkari's citation to 26 U.S.C. § 6501 and discussion is incomplete, and ignores the exceptions to the section. In addition, Mr. Matkari's interpretation of how statutes of limitations from various parts of the United States' Code affect one another, an interpretation that is unsupported by any law or fact, does not prove his argument and should be rejected.

Second, the implication that individuals should not be expected to comply with the language of the law because the financial institutions they choose to have accounts with are "notorious for failing to provide their customers with records," is ridiculous. Here too, Mr. Matkari does not provide any law in support of his argument, and it should be rejected.

Summarily, because it is clear that the requirements of 31 C.F.R. § 1010.420 satisfy the second prong of the *Grosso* test, and Mr. Matkari has provided nothing to refute this premise, his arguments should be summarily denied.

### iii.    Public Aspects

The third and final prong of the *Gross* test is that "the records [sought] must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso*, 390 U.S. at 68. This requirement is also satisfied here.

It is beyond dispute that Congress has the power to "regulate Commerce with foreign

Nations." U.S. Const., art. I, §, cl. 3. In other contexts, the Supreme Court has stated that the federal government's authority is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (explaining that neither probable cause nor even reasonable suspicion is generally required for border searches). Thus "the government can constitutionally regulate or forbid the activity concerned" in this case, *i.e.*, maintaining a foreign bank account. *Shapiro*, 335 U.S. at 32. Indeed, in considering an early challenge to the BSA, the Supreme Court noted that "[s]imilar requirements" were upheld in *Shapiro*, and also that "Congress could have closed the channels of commerce entirely to negotiable instruments, had it thought that so drastic a solution were warranted." *California Bankers Ass'n v. Shultz*, 416 U.S. at 46-47. Accordingly, there can be "no serious misgiving that" the Government has overstepped its legitimate regulatory powers by "requir[ing] the keeping" of foreign-account records. *Shapiro*, 335 U.S. at 32; *see also Calinfornia Bankers Ass'n v. Shultz*, 416 U.S. at 46 (citing *Shapiro*).

The Supreme Court has recognized that there is no material distinction between records required to be kept by law and those regularly or "easily accessed" by the government. *See Marchetti,* 390 U.S. at 56 n. 14 ("We perceive no meaningful difference between an obligation to maintain records for inspection, and such an obligation supplemented by a requirement that those records be filed periodically with officers of the United States."); *See also In re Grand Jury Proceedings, No. 4-10*, 707 F.3d at 1273. Several Courts of Appeals have held that "if the government's purpose in imposing the regulatory scheme is essentially regulatory, then it necessarily has some 'public aspects,'" sufficient for the Required Records Doctrine's third prong. *In re M.H.,* 648 F.3d at 1076 (citing *Shapiro,* 335 U.S. at 33–34, 68 S.Ct. 1375); *accord Donovan v. Mehlenbacher,* 652 F.2d 228, 231 (2d Cir.1981); *See also In re Grand Jury*

*Subpoena Dated February 2, 2012*, 741 F.3d at 352.

31 C.F.R. § 1010.420 is a valid, civil regulatory scheme, and Mr. Matkari voluntarily participated in the regulated activity, namely foreign banking. When an accountholder such as Mr. Matkari voluntarily engages in foreign banking, he effectively waives his Fifth Amendment privilege to prevent the government's compelled disclosure of his account records. *United States v. Chabot*, 793 F.3d at 348–49 (citing to *In re M.H.,* 648 F.3d at 1078 (relying on this consent theory in concluding that the appellant's account records satisfied the public aspects prong of the *Grosso* test); *In re Special Feb. 2011–1 Grand Jury Subpoena,* 691 F.3d at 909 ("The voluntary choice to engage in an activity that imposes record-keeping requirements under a valid civil regulatory scheme carries consequences, perhaps the most significant of which ... is the possibility that those records might have to be turned over upon demand, notwithstanding any Fifth Amendment privilege."); *cf. Smith v. Richert,* 35 F.3d at 303 (holding that production of certain documents necessary to determine personal income tax liability were not within required records exception, because "[t]he decision to become a taxpayer cannot be thought voluntary ... [as] [a]lmost anyone who works is a taxpayer, along with many who do not")).

Additionally, as the *Chabot* Court observed, the government circulates the data from these records to several government agencies, which use this information for a number of important noncriminal purposes. *United States v. Chabot*, 793 F.3d at 348–49; s*ee also Under Seal,* 737 F.3d at 335, 337 (concluding that the records kept pursuant to § 1010.420 possess public aspects given the Treasury Department's circulation of this data to other government agencies for the purpose of implementing economic, monetary, and regulatory public policies); *In re Grand Jury Subpoena,* 696 F.3d at 436 (employing similar reasoning). Through these processes, Mr. Matkari's records acquire public aspects. *See United States v. Chabot*, 793 F.3d at

348–49.

In his Response, Mr. Matkari argues that an individual's personal bank records do not possess sufficient public aspects to satisfy the required records exception. Dkt. No. 14, at pp. 23-27. While Mr. Matkari relies on *U.S. v. Porter,* 711 F. 2d 1397, this case addressed the record maintenance requirement under 26 C.F.R. § 1.6001-1(a). Mr. Matkari provides that "[t]he relationship between the IRS and a taxpayer with a foreign bank account may not be meaningfully distinguished from the relationship between the IRS and the taxpayer in *Porter*." Dkt. No. 14, at p. 27. However, he does not provide any argument to distinguish this case from the Courts of Appeals cases cited above, or why the Court should focus on a regulation under the Internal Revenue Code, rather than ample body of case law that concludes that the information sought in 31 C.F.R. § 1010.420 falls within the Public Assets definition, and as such, within the required records exception (as the other two prongs of the *Grosso* test have been satisfied).

Summarily, because it is clear that the requirements of 31 C.F.R. § 1010.420 satisfy the third prong of the *Grosso* test, and because Mr. Matkari has provided nothing to refute this premise, his arguments should be summarily denied.

### iv.   All the *Grosso* Factors Have Been Satisfied

Mr. Matkari has failed to raise valid reasons as to why his foreign bank account records should not be included in the required records exception to the Fifth Amendment privilege. Because 31 C.F.R. § 1010.420 is essentially regulatory, requires account owners to retain records that they customarily keep, and requires retention of records that have public aspects, the Court should dismiss Mr. Matkari's arguments and grant the United States' Petition to enforce the IRS Summons.

//

15

### B.  THE FOREGONE CONCLUSION EXCEPTION

Under the foregone conclusion doctrine—another exception to the act-of-production privilege—when the Government already knows of the existence and location of documents, the act of producing those documents is not protected by the Fifth Amendment because "the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]." *Fisher*, 425 U.S. at 411.  In such circumstances, enforcement of the summons is a question "not of testimony but of surrender" and "no constitutional rights are touched." *Id.*

To compel the production of documents under this doctrine, the Government must demonstrate that it knows of the documents' existence and location "with reasonable particularity" and that it can authenticate the documents independent of the taxpayer's production of them.  *United States v. Greenfield*, 831 F.3d 106, 116, 118 (2d Cir. 2016); *United States v. Bright*, 596 F. 3d 683, 692 (9th Cir.2010); *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993).  "Reasonable particularity" does not require that the Government have "actual knowledge of the existence and location of each and every responsive document."  *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004); *see Greenfield*, 831 F.2d at 116.  Rather, where the Government knows of the existence of a particular bank account, the existence of documents that "are possessed by the owners of financial accounts as a matter of course," such as account applications, account statements, and charge receipts, is a foregone conclusion, and such documents must be produced.  *United States v. Norwood*, 420 F.3d 888, 895 (8th Cir. 2005); *see Greenfield*, 831 F.2d at 118-20.

The government bears the burden of proof and must have had the requisite knowledge

before issuing the summons or subpoena. *See In re Grand Jury Subpoena,* 383 F.3d at 910; *United States v. Bright,* 596 F. 3d at 692. The "appropriate moment for the foregone-conclusion analysis is when the relevant summons was issued." *Greenfield*, 831 F.2d at 124.  That is, "[t]he relevant date on which existence and possession of the documents must be shown is the date on which the IRS summons is served." *Id.* (internal quotation marks omitted).  "[I]n many circumstances, the Government's ability to establish [its knowledge of] existence and control as of an earlier date does permit an inference of existence and control as of the date of the Summons." *Id.* at 125.  But where circumstances do not permit such an inference, if the taxpayer's "incremental communication"— the communication that the documents have remained in his or her control up until the date of production—is itself potentially incriminatory, the Government must show that it knew that the documents continued to exist and be in the taxpayer's control in order to establish that the foregone conclusion doctrine applies.  *Id.* at 124-25.

As described in the Styron and Salas Declarations (Dkt. No. 1-1; 1-2), when the IRS served the Summons on February 27, 2018, it knew of the existence of a number of bank accounts at various banks around the world that were controlled by Mr. Matkari. The IRS's knowledge was based on Mr. Matkari's income tax returns for the taxable years 2011 through 2014, where he provided that he had financial interest in or signature authority over a financial account located in a foreign county, as well as the IRS's examination that revealed that Mr. Matkari had interest in foreign bank accounts located in Guernsey, India, and Hong Kong. Dkt. No. 1-2, at ¶ 5, 8. Here, Mr, Matkari must produce the records related to these bank accounts, because their existence, location, and authenticity is a foregone conclusion.

//

### III.     MR. MATKARI'S MUST COMPLY WITH THE SUMMONS AND TESTIFY

Mr. Matkari briefly raises concerns about his testimony before the Revenue Agent assigned to this case. Dkt. No. 14, at p. 5. However, his argument focuses on the requested production of documents. Mr. Matkari has not elaborated why he should not comply with the Summons and testify before the Revenue Agent.

A person summoned to answer questions from an IRS agent is entitled to assert the Fifth Amendment right not to testify against oneself, where appropriate. The assertion of the privilege, however, is subject to the same limitations that obtain in other situations. As a corollary to this principle, "a mere blanket assertion of the privilege will not suffice." *United States v. Hatchett*, 862 F.2d 1249, 1251 (6th Cir. 1988). The privilege must be asserted with specificity. It is "incumbent upon the Government to ask specific questions" when a summoned party does appear. *United States v. Drollinger*, 80 F.3d 389, 393 n.5 (9th Cir. 1996). If the agent excuses appearance based on a blanket assertion of the Fifth Amendment, the IRS may be found to have waived compliance, thereby rendering the summons unenforceable. *See United States v. Malnik*, 489 F.2d 682 (5th Cir. 1974); *United States v. Lipshy*, 492 F. Supp. 35, 39 (N.D. Tex. 1979). Therefore, the United States requests that the Court order Mr. Matkari to appear before the Revenue Agent and provide testimony.

### IV.     MR. MATKARI DOES NOT DISPUTE THAT THE UNITED STATES SATISFIED THE *POWELL* FACTORS

In order to obtain enforcement of a summons, the United States must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964).

Here, Mr. Matkari has failed to raise any arguments concerning the United States' satisfaction of the *Powell* requirements, and as evidenced in the Petition and exhibits thereto, the United States satisfied it *prima facie* showing under *Powell*. Mr. Matkari has not been able to show any reason to prevent enforcement of the Summons.

## CONCLUSION

Based on the foregoing, and because Mr. Matkari has not shown any valid reason why the Summons against him should not be enforced, the United States respectfully requests that:

A.  The Court enter an order directing Mr. Matkari to fully obey the subject summons and each requirement thereof, by ordering the attendance, testimony, and production required and called for by the terms of the summons, before Revenue Agent Styron, or any other proper officer or employee of the IRS, at such time and place as may be set by Revenue Agent Styron or any other proper officer or employee of the IRS;

B.  The United States recover its costs incurred in maintaining this proceeding; and

C.  The Court grant such other and further relief as the Court deems proper or justice may require.

Respectfully submitted this 27th day of August, 2018.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Rika Valdman*
RIKA VALDMAN
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-514-6056 (v)
202-307-0054 (f)
Rika.Valdman@usdoj.gov

ROBERT C. TROYER
United States Attorney
District of Colorado

*Attorneys for the United States of America*

**<u>CERTIFICATE OF SERVICE</u>**

I HEREBY CERTIFY that on this 27th day of August, 2018, I electronically filed the

foregoing document with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the following:

> **Michael F. Arvin**
> Michael F. Arvin, P.C.
> 3773 Cherry Creek North Drive, #575
> Denver, CO 80209-3825
> arvinlawoffices-ecf@arvin-denver.com

> */s/ Rika Valdman*
> RIKA VALDMAN
> Trial Attorney
> Civil Trial Section, Western Region