IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Case No. 18-mc-00051-MSK-KLM

UNITED STATES OF AMERICA,

       Petitioner,

       v.

RAJARAM K. MATKARI,

       Respondent.

---

## UNITED STATES' RESPONSE TO RESPONDENT'S OBJECTIONS TO THE RECOMMENDATION OF THE UNITED STATES MAGISTRATE JUDGE

---

The United States of America, by and through undersigned counsel, hereby submits its Response to Rajaram K. Matkari's Objections to the Recommendation, filed on April 23, 2019 ("Objection"). Dkt. No. 20. The Objection objects to Magistrate Judge Mix's Recommendation, entered on March 19, 2019 ("Recommendation"). Dkt. No. 17.  For the reasons set forth in the Recommendation, the United States' Petition to Enforce Summons (Dkt. No. 1) and Reply in Support (Dkt. No. 15), and as further set forth below, the United States respectfully requests that the Objection be denied and that the Recommendation be upheld.

### BACKGROUND

This case is before the Court on the United States' Petition to Enforce IRS Summons that was served on Matkari on February 27, 2018, and directed him to produce for examination certain books, papers, records, and other data described in the Summons, including records of

1

foreign bank account records that 31 C.F.R. § 1010.420 required him to keep; and to appear and give testimony. Dkt. No. 1. In his Response to the Petition, Matkari took the position that by requiring him to produce records of his foreign financial accounts, the Summons and 31 C.F.R. § 1010.420 implicate his Fifth Amendment rights. *See* Dkt. No. 14. In its Reply, the United States demonstrated that the required records exception to the Fifth Amendment right against self incrimination applies in this case. In support of its argument, the United States provided an ample body of case law, including decisions from eight (8) Circuit Courts of Appeals that concluded that the required-records doctrine applies to grand jury subpoenas or to IRS administrative summonses demanding the same basic account records at issue in this case. *See* Dkt. No. 15.

On March 19, 2019, Magistrate Judge Mix issued a Recommendation to grant the United States' Petition. Dkt. No. 17. In the Recommendation, the Court concluded that: (1) the United States has established the *prima facie* case for the enforcement of the Summons, and that Matkari made no argument to rebut the prima facie case; (2) the Bank Secrecy Act ("BSA") satisfies the *Grosso* elements and is "essentially regulatory", "customarily kept", and has "public aspects", and as such the required records exception applies to the Summons, and Matkari may not claim his Fifth Amendment act of production privilege to refuse the production of documents in responding to the Summons; and (3) Matkari may not claim his Fifth Amendment privilege in refusing to testify pursuant to the Summons.

In his Objection, Matkari fails to state any valid grounds upon which the Court should reject the Recommendation. Instead, he continues raising speculative arguments that are unsupported by legal authority. None of his arguments show that the Recommendation was in

error, or why the Court should depart from the precedent of eight Circuit Courts, merely on the hope that the Tenth Circuit may rule otherwise. In addition, Matkari raises arguments never before raised, which are deemed waiveable. *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir. 1996) (Any arguments raised for the first time in objections are deemed waivable and need not be considered by the district court.)

## ARGUMENT

### I.      Legitimate Purpose of IRS Summons

In order to obtain enforcement of a summons, the United States must establish that the summons: (1) is issued for a legitimate purpose; (2) seeks information relevant to that purpose; (3) seeks information that is not already within the IRS's possession; and (4) satisfies all administrative steps required by the Internal Revenue Code. *United States v. Powell*, 379 U.S. 48, 57-58 (1964). It must also be shown that there has been no criminal referral of the investigation to the Department of Justice, as defined by 26 U.S.C. § 7602(d)(2). The Recommendation concluded that the United States has established the *prima facie* case for the enforcement of the Summons. Dkt. No. 17, at pp. 8-10.

In his Objection, Matkari acknowledges that he did not make any arguments to rebut the IRS' *prima facie* case under the *Powell* factors. However, he goes a roundabout way to conclude that his self-serving conclusory statements about Revenue Agent Heather Styron prove that the IRS' investigation is not for a legitimate purpose. Dkt. No. 20, at pp. 3-4.

Matkari raises the same speculation that he advanced in his Response to the Petition. He states that Heather Styron, the Revenue Agent assigned to the case, "works in a civil-side examination group (Special Enforcement Program) that frequently supports IRS-Criminal

Investigation in the development of cases with fraud potential, and sometimes participates in parallel civil and criminal investigations." Dkt. No. 17, at pp. 3-4. He then becomes convinced that "Ms. Styron is either working to develop a case for referral to IRS-CI or, in the alternative, is working jointly with an IRS-CI Special Agent on an already existing, but to date undisclosed, criminal investigation targeting Mr. Matkari." *Id.* Matkari acknowledges that he did not argue that the IRS' examination was done for an impermissible purpose, but argues that based on his unfounded speculations about Agent Styron, the IRS Summons would be for an improper purpose because the Summons is seeking information that he believes is "civil-side functions within IRS". *Id.*

The Recommendation already addressed Matkari's speculations regarding Ms. Styron and concluded that "in addition to being purely speculative and not supported by any evidence, this argument is irrelevant to the general statutory scheme of the BSA …" Dkt. No. 17, at pp. 16-17. Matkari again provides unsubstantiated allegations and goes about a circular way to "prove" his argument. He believes that there is a criminal investigation, therefore a civil Summons is improper. However, he does not allege any facts to show that the IRS is conducting a criminal investigation. *See e.g. High Desert Relief, Inc. v. United States*, 917 F.3d 1170, 1190 (10th Cir. 2019) (where the Court concluded that a party's characterization of an investigation as "criminal or pseudo-criminal" without any facts to support such assertions was unavailing). Not only is this argument unfounded in law and fact, it also defies logic, and in any event, the IRS has the authority to issue criminal summonses pursuant to 26 U.S.C. 7602(b). Therefore, this argument should be summarily rejected. As discussed in detail in the Recommendation, the United States has established its *prima facie* case to enforce the Summons, and Matkari has

raised nothing to rebut that. *See* Dkt. No. 17, at pp. 8-10.

## II.      The Required Records Exception –*Grosso* Test

The "required records" exception to the Fifth Amendment applies to the disclosure of documents that the Government requires persons in a regulated industry to maintain.  *See generally In re Grand Jury Proceedings*, 601 F.2d 162, 168 (5th Cir. 1979). There are several reasons for this rule, notably that "the public interest in obtaining such information outweighs the private interest opposing disclosure and the further rationale that such records become tantamount to public records."  *Id.* (internal citations omitted).  Additionally, courts have held that production of such records is "in a sense consented to as a condition of being able to carry on the regulated activity involved."  *Id.* at 171.

The Supreme Court first recognized the required-records exception in *Shapiro v. United States*, 335 U.S. 1 (1948), and formulated the standards for the exception in *Grosso v. United States*, 390 U.S. 62, 67-68 (1968):

> The premises of the doctrine, as it is described in *Shapiro,* are evidently three: first, the purposes of the United States' inquiry must be essentially regulatory; second, information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept; and third, the records themselves must have assumed "public aspects" which render them at least analogous to public documents.

This formulation of the rule has become a three-part test that courts generally apply to determine whether the required-records exception applies.  *See generally In re Grand Jury Subpoena*, 21 F.3d 226, 228 (8th Cir. 1994).

While the Tenth Circuit has not addressed this question, applying the *Grosso* test, eight Courts of Appeals have held that the required-records doctrine applies to grand jury subpoenas or to IRS administrative summonses demanding the same basic account records at issue in this case.

5

*United States v. Zhong H. Chen,* 815 F.3d 72 (1st Cir. 2016); *United States v. Chabot*, 793 F.3d
338 (3d Cir. 2015); *In re Grand Jury Subpoena Dated February 2, 2012*, 741 F.3d 339, 347 (2d
Cir. 2013); *United States v. Under Seal,* 737 F.3d 330, (4th Cir. 2013); *In re Grand Jury
Proceedings, No. 4–10,* 707 F.3d 1262 (11th Cir. 2013); *In re Grand Jury Subpoena,* 696 F.3d
428 (5th Cir. 2012); *In re Special February 2011–1 Grand Jury Subpoena Dated September 12,
2011,* 691 F.3d 903 (7th Cir. 2012), *cert. denied*, 133 S. Ct. 2338 (2013); *In re M.H.,* 648 F.3d
1067 (9th Cir. 2011), *cert. denied*, 133 S. Ct. 26 (2012).

The Recommendation thoroughly analyzes each of the three *Grosso* factors, and agrees
with eight other Courts of Appeals, that the required records exception applies to the BSA. Dkt.
No. 17, at pp. 10-26. Matkari's Objection fails to show why the Recommendation is in any way
mistaken.

### i.     Essentially Regulatory Purpose

The first *Grosso* prong asks whether the record requirement is "essentially regulatory."
*Grosso,* 390 U.S. at 68. This precludes Congress from circumventing the Fifth Amendment
privilege by enacting comprehensive legislation "directed at a 'selective group inherently suspect
of criminal activities.'" *Marchetti,* 390 U.S. at 57 (quoting *Albertson v. Subversive Activities
Control Bd.,* 382 U.S. 70, 79 (1965)).

Courts have looked at what and whom 31 C.F.R. § 1010.420 targets, and whether the
recordkeeping scheme targets an inherently criminal activity and/or an inherently suspicious
class of persons, and have concluded that it targets those engaged in the lawful activity of
owning a foreign bank account, and that there "is nothing inherently illegal about having or
being a beneficiary of an offshore foreign bank account, owners of these accounts are not

6

'inherently suspect.'" *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at 347-348; *U.S. v. Chabot*, 793 F.3d at 345; *In Re M.H.,* 648 F.3d at 1075-76. "[T]he [Bank Secrecy Act]'s record-keeping requirements do not apply exclusively to those engaged in criminal activity." *In re Grand Jury Subpoena,* 696 F.3d at 435; *United States v. Under Seal*, 737 F.3d at 336.

The Recommendation discussed this factor in detail and concludes that "the Court agrees with [the United States] and the eight Courts of Appeals that the BSA's record-keeping requirement is 'essentially regulatory,'" and satisfies the first *Grosso* element. Dkt. No. 17, at p. 17. The Objection fails to show otherwise. In fact, Matkari again makes speculative and conclusory statements that are irrelevant to the determination of whether the purpose of the BSA is essentially regulatory. Matkari lists criminal tax statutes and statistics about the IRS examination of tax returns in 2014, and states that "an *ex parte* hearing in this matter would expose several links of the variety contemplated by Fifth Amendment/self-incrimination jurisprudence." Dkt. No. 20, at pp. 5-7. This, in his view, somehow suggests that the purpose of the BSA is not essentially regulatory. However, he fails to provide any legal authority or analysis in support of his position, and his argument must fail.

### ii.  Customarily Kept

The second *Grosso* prong requires that the regulated "information is to be obtained by requiring the preservation of records of a kind which the regulated party has customarily kept." *Grosso,* 390 U.S. at 68.

Several Courts of Appeals found the requirement that records be customarily kept is

easily satisfied in 31 C.F.R. § 1010.420[1]. 31 C.F.R. § 1010.420 mandates that owners and beneficiaries of foreign accounts keep the following information accessible for five years: (1) the name on the account, (2) the account number, (3) the name and address of the bank or person with whom the account is maintained, (4) the account type, and (5) the maximum annual account value. The Ninth Circuit has held that the foreign financial account information required to be kept under 31 C.F.R. § 1010.420 is "basic account information that bank customers would customarily keep, in part because they must report it to the IRS every year as part of the IRS's regulation of offshore banking, and in part because they need the information to access their foreign bank accounts." *In re M.H.,* 648 F.3d at 1076. The Third Circuit provided that "Common sense tells us that this is all information that an accountholder needs in order to access funds located abroad or at home. Because reasonable accountholders would retain this information in order to readily access their foreign accounts, we conclude that these are records that accountholders customarily would keep. *United States v. Chabot*, 793 F.3d at 347 (citing to *In re M.H., 648 F. 3d at 1076; In Re Grand Jury Subpoena Dated February 2, 2012,* 741 F.3d at 350; *In re Grand Jury Subpoena,* 696 F.3d at 435)); *see also In re Grand Jury Proceedings, No. 4-10*, 707 F.3d at 1272 ("Simply put, the [] argument that these records are not "customarily kept" is a non-starter.").

In analyzing the second *Grosso* test, the Recommendation provides that "[g]iven the overwhelming precedent in other circuits and Respondent's failure to refute the second *Grosso*

---

[1] It should be noted that not all courts of appeals have treated this factor as a requirement of the doctrine. *See, e.g., United States v. Garcia- Cordero*, 610 F.3d 613, 616-17 (11th Cir. 2010) (discussing and applying the required-records doctrine but not using the phrase "customarily kept" or any equivalent); *In re Grand Jury Proceedings (McCoy and Sussman)*, 601 F.2d 162,168 (5th Cir. 1979) (same).

element, the Court agrees with [the United States] that the records sought pursuant to 31 C.F.R. § 1010.420 are a kind "customarily kept." Accordingly, the Court finds that the second *Grosso* element under the required records exception is satisfied." Dkt. No. 17, at p. 20.

Matakari's only argument against the Court's conclusion is that "[m]any of the remaining circuit decisions simply fall in line with the cases decided before them…" and that "many decisions could have gone the other way." Dkt. No. 20, at p. 8. This is somehow proof to him that the Court should disagree with the Courts of Appeals who addressed this question. However, Matkari does not show any reason for the Court to depart from the Recommendation, and his arguments fail.

### iii.    Public Aspects

The third and final prong of the *Grosso* test is that "the records [sought] must have assumed 'public aspects' which render them at least analogous to public documents." *Grosso*, 390 U.S. at 68.

It is beyond dispute that Congress has the power to "regulate Commerce with foreign Nations." U.S. Const., art. I, §, cl. 3. In other contexts, the Supreme Court has stated that the federal government's authority is "at its zenith at the international border." *United States v. Flores-Montano*, 541 U.S. 149, 152-53 (2004) (explaining that neither probable cause nor even reasonable suspicion is generally required for border searches). Thus "the government can constitutionally regulate or forbid the activity concerned" in this case, *i.e.*, maintaining a foreign bank account. *Shapiro*, 335 U.S. at 32. Indeed, in considering an early challenge to the BSA, the Supreme Court noted that "[s]imilar requirements" were upheld in *Shapiro*, and also that "Congress could have closed the channels of commerce entirely to negotiable instruments, had it

9

thought that so drastic a solution were warranted." *California Bankers Ass'n v. Shultz*, 416 U.S.

at  46-47. Accordingly, there can be "no serious misgiving that" the Government has overstepped

its legitimate regulatory powers by "requir[ing] the keeping" of foreign-account records.

*Shapiro*, 335 U.S. at 32; *see also Calinfornia Bankers Ass'n v. Shultz*, 416 U.S. at 46 (citing

*Shapiro*).

The Supreme Court has recognized that there is no material distinction between records

required to be kept by law and those regularly or "easily accessed" by the government. *See*

*Marchetti,* 390 U.S. at 56 n. 14 ("We perceive no meaningful difference between an obligation to

maintain records for inspection, and such an obligation supplemented by a requirement that those

records be filed periodically with officers of the United States."); *See also In re Grand Jury*

*Proceedings, No. 4-10*, 707 F.3d at 1273. Several Courts of Appeals have held that "if the

government's purpose in imposing the regulatory scheme is essentially regulatory, then it

necessarily has some 'public aspects,'" sufficient for the Required Records Doctrine's third

prong. *In re M.H.,* 648 F.3d at 1076 (citing *Shapiro,* 335 U.S. at 33–34, 68 S.Ct. 1375); *accord*

*Donovan v. Mehlenbacher,* 652 F.2d 228, 231 (2d Cir.1981); *See also In re Grand Jury*

*Subpoena Dated February 2, 2012*, 741 F.3d at 352.

When an accountholder voluntarily engages in foreign banking, he effectively waives his

Fifth Amendment privilege to prevent the government's compelled disclosure of his account

records. *United States v. Chabot*, 793 F.3d at 348–49 (citing to *In re M.H.,* 648 F.3d at 1078

(relying on this consent theory in concluding that the appellant's account records satisfied the

public aspects prong of the *Grosso* test); *In re Special Feb. 2011–1 Grand Jury Subpoena,* 691

F.3d at 909 ("The voluntary choice to engage in an activity that imposes record-keeping

requirements under a valid civil regulatory scheme carries consequences, perhaps the most

significant of which ... is the possibility that those records might have to be turned over upon

demand, notwithstanding any Fifth Amendment privilege."); *cf. Smith v. Richert,* 35 F.3d at 303

(holding that production of certain documents necessary to determine personal income tax

liability were not within required records exception, because "[t]he decision to become a

taxpayer cannot be thought voluntary ... [as] [a]lmost anyone who works is a taxpayer, along

with many who do not")).

Analyzing the third *Grosso* factor, the Recommendation correctly concludes that "given

the overwhelming precedent in other circuits and Respondent's failure to distinguish those cases

from the present action, the Court agrees with Petitioner that the records sought pursuant to 31

C.F.R. § 1010.420 have 'public aspects' to satisfy the third and final *Grosso* element under the

required records exception." Dkt. No. 17, at p. 25-26.

Matkari's Objection continues to rely on *U.S. v. Porter,* 711 F. 2d 1397 (7th Cir. 1983)

and simply makes a conclusory statement that there is no meaningful distinction "between the

'regular' taxpayer required to keep books & records, and a 'regular' taxpayer who also has a

foreign bank account and is also required to produce those records." Dkt. No. 20, at p. 9. Not

only is this conclusory statement lacking any legal authority or analysis in support of it; the

Recommendation already addressed this argument and provided that "[Matkari] does not make

any argument as to why the Court should find *Porter* dispositive of this case rather than the eight

appellate decisions that explicitly found the BSA's record-keeping requirement to satisfy the

'public aspect' element under *Grosso*." Dkt. No. 17, at p. 23. In his Objection, Matkari does not

make any argument why *Porter* is dispositive either. Nothing in the Objection shows why the

Recommendation was wrong, and Matkari's argument must fail.

### iv.    All the *Grosso* Factors Have Been Satisfied

Summarily, Matkari's Objection does not provide any argument to show that the

Recommendation was wrong in concluding that the BSA record satisfies the *Grosso* elements

and is "essentially regulatory," "customarily kept", and has "public aspects", and as such the

required records exception applies to the Summons. Thus, the Court should reject his Objection

and uphold the Recommendation.

### III.    Matkari's Testimony

A person summoned to answer questions from an IRS agent is entitled to assert the Fifth

Amendment right not to testify against oneself, where appropriate. The assertion of the privilege,

however, is subject to the same limitations that obtain in other situations. As a corollary to this

principle, "a mere blanket assertion of the privilege will not suffice." *United States v. Hatchett*,

862 F.2d 1249, 1251 (6th Cir. 1988). The privilege must be asserted with specificity. It is

"incumbent upon the Government to ask specific questions" when a summoned party does

appear. *United States v. Drollinger*, 80 F.3d 389, 393 n.5 (9th Cir. 1996). If the agent excuses

appearance based on a blanket assertion of the Fifth Amendment, the IRS may be found to have

waived compliance, thereby rendering the summons unenforceable. *See United States v. Malnik*,

489 F.2d 682 (5th Cir. 1974); *United States v. Lipshy*, 492 F. Supp. 35, 39 (N.D. Tex. 1979).

The Recommendation properly concludes that Matkari has not properly asserted the Fifth

Amendment as a basis for refusing to give testimony. Dkt. No. 17, at pp. 26-27.

The Objection provides that Matkari, if compelled to testify, would only furnish his

name, address, and Social Security Number, and will refuse to answer any substantive questions. Dkt. No. 20, at pp. 10-11. Matkati then provides that he is elderly and in poor health; and as such requests that his counsel be allowed to testify in his stead. *Id.* This argument should be rejected.

First, Matkari did not properly address the question of his testimony in his Response to the Petition, and any new arguments are deemed waived and need not be considered by the Court. *See Marshall v. Chater*, supra.

Second, even if the Court were to consider his argument, as detailed above, mere blanket assertions of the Fifth Amendment are not acceptable and Matkari must be required to respond to every question asked by the IRS. *See United States v. Malnik,* supra; *United States v. Lipshy*, supra.

Third, the Fifth Amendment privilege is a personal privilege and cannot be asserted by counsel or by third parties. *Couch v. United States*, 409 U.S. 322, 328 (1973). As such, the Fifth Amendment Privilege would need to be invoked by Matkari himself, not by his attorney.

Finally, the IRS can provide Matkari with reasonable accommodations, to allow him to provide testimony without endangering his health. If Matkari is in need of such accommodations, he may contact Revenue Agent Styer to discuss those.

### IV.    Scope of Summons

In a new argument not previously raised, Matkari argues in the alternative, that if the Court finds that he in fact is required to produce his bank records, he should only be required to produce records for a five (5) year look-back period from the date of the Summons, i.e. February 27, 2013, because 31 C.F.R. § 1010.420 requires "records to be retained for a period of 5 years and shall be kept at all times available for inspection as authorized by law." He further asserts,

that because the IRS is examining his Forms 1040 for the years 2011 through 2014, the summoned information for all other periods should not be allowed. Dkt. No. 20, at pp. 12-13.

First, this is again an argument not raised by Matkari previously, and as such is deemed waived and need not be considered by the Court. *See Marshall v. Chater*, supra.

That said, 31 C.F.R. § 1010.420 mandates that owners and beneficiaries of foreign accounts keep accessible and make available for inspection the following information for five years: (1) the name on the account, (2) the account number, (3) the name and address of the bank or person with whom the account is maintained, (4) the account type, and (5) the maximum annual account value. Matkari is right that pursuant to 31 C.F.R. § 1010.420, he needs to produce the records five years back from the date of the Summons. However, as the regulation requires the retention of the maximum annual account value, he should be required to provide information through January 1, 2013.

Nonetheless, Matkari should also be required to produce the entirety of the summoned bank records pursuant to the foregone conclusion doctrine—another exception to the act-of-production privilege—which provides that, when the Government already knows of the existence and location of documents, the act of producing those documents is not protected by the Fifth Amendment because "the taxpayer adds little or nothing to the sum total of the Government's information by conceding that he in fact has the [documents]." *Fisher v. United States*, 425 U.S. 391, 411 (1976). In such circumstances, enforcement of the summons is a question "not of testimony but of surrender" and "no constitutional rights are touched." *Id.*

To compel the production of documents under this doctrine, the Government must demonstrate that it knows of the documents' existence and location "with reasonable

14

particularity" and that it can authenticate the documents independent of the taxpayer's production of them. *United States v. Greenfield*, 831 F.3d 106, 116, 118 (2d Cir. 2016); *United States v. Bright,* 596 F. 3d 683, 692 (9th Cir. 2010); *In re Grand Jury Subpoena Duces Tecum Dated Oct. 29, 1992*, 1 F.3d 87, 93 (2d Cir. 1993). "Reasonable particularity" does not require that the Government have "actual knowledge of the existence and location of each and every responsive document." *In re Grand Jury Subpoena Dated April 18, 2003*, 383 F.3d 905, 910 (9th Cir. 2004); *see Greenfield*, 831 F.2d at 116. Rather, where the Government knows of the existence of a particular bank account, the existence of documents that "are possessed by the owners of financial accounts as a matter of course," such as account applications, account statements, and charge receipts, is a foregone conclusion, and such documents must be produced. *United States v. Norwood*, 420 F.3d 888, 895 (8th Cir. 2005); *see Greenfield*, 831 F.2d at 118-20.

The government bears the burden of proof and must have had the requisite knowledge before issuing the summons or subpoena. *See In re Grand Jury Subpoena,* 383 F.3d at 910; *United States v. Bright,* 596 F. 3d at 692. The "appropriate moment for the foregone-conclusion analysis is when the relevant summons was issued." *Greenfield*, 831 F.2d at 124. That is, "[t]he relevant date on which existence and possession of the documents must be shown is the date on which the IRS summons is served." *Id.* (internal quotation marks omitted). "[I]n many circumstances, the Government's ability to establish [its knowledge of] existence and control as of an earlier date does permit an inference of existence and control as of the date of the Summons." *Id.* at 125. But where circumstances do not permit such an inference, if the taxpayer's "incremental communication"— the communication that the documents have

remained in his or her control up until the date of production—is itself potentially incriminatory, the Government must show that it knew that the documents continued to exist and be in the taxpayer's control in order to establish that the foregone conclusion doctrine applies. *Id.* at 124-25.

When the IRS served the Summons on February 27, 2018, it knew of the existence of a number of bank accounts at various banks around the world that were controlled by Matkari. The IRS's knowledge was based on Mr. Matkari's income tax returns for the taxable years 2011 through 2014, where he provided that he had financial interest in or signature authority over a financial account located in a foreign county, as well as the IRS's examination that revealed that Mr. Matkari had interests in foreign bank accounts located in Guernsey, India, and Hong Kong. *See* Dkt. No. 1-2, at ¶ 5, 8. Matkari must produce the records related to these bank accounts, because their existence, location, and authenticity is a foregone conclusion.

Finally, the IRS may seek any reasonable information in furtherance of its examination. While the taxable years 2011 through 2014 are currently under examination, the summoned information was concluded to be potentially relevant to the examination by Agent Styron, and the IRS should be allowed to conduct its examinations as it determines. This argument must fail as well.

//

//

//

16

**V.      Conclusion**

For the foregoing reasons, the Court should adopt the March 19, 2019 Recommendation

and reject Matkari's Objection.

Respectfully submitted this 7th day of May, 2019.

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Rika Valdman*
RIKA VALDMAN
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 683
Washington, D.C. 20044
202-514-6056 (v)
202-307-0054 (f)
Rika.Valdman@usdoj.gov

JASON R. DUNN
United States Attorney
District of Colorado

*Attorneys for the United States of America*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 7th day of May, 2019, I electronically filed the

foregoing document with the Clerk of Court using the CM/ECF system, which will send

notification of such filing to the following:

**Michael F. Arvin**
Michael F. Arvin, P.C.
3773 Cherry Creek North Drive, #575
Denver, CO 80209-3825
arvinlawoffices-ecf@arvin-denver.com

*/s/ Rika Valdman*
RIKA VALDMAN
Trial Attorney
Civil Trial Section, Western Region

18