**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger**

**Civil Action No. 18-mc-00051-MSK-KLM**

**UNITED STATES OF AMERICA,**

     **Petitioner,**

**v.**

**RAJARAM K. MATKARI,**

     **Respondent.**

---

**OPINION AND ORDER OVERRULING OBJECTIONS, ADOPTING
RECOMMENDATION, AND ENFORCING SUBPOENA**

---

     **THIS MATTER** comes before the Court pursuant to Mr. Matkari's Objections **(# 20)** to the Magistrate Judge's Recommendation **(# 17)** that the Petitioner's ("IRS") Petition to Enforce Summons **(# 1)** be granted, and the IRS' reponse **(# 18)**.

## FACTS

     On or about February 27, 2018, the IRS issued a summons on Mr. Matkari, directing him to appear before an IRS officer and to deliver various bank, brokerage, and other financial records relating to him.  The IRS agent issuing the summons, Heather Styron, stated that the IRS is conducting an investigation into the federal income tax liabilities of Mr. Matkari and, more specifically, whether Mr. Matkari has failed to properly report his interest in foreign bank accounts.  Mr. Matkari refused to appear as directed and the IRS commenced this action by filing a Petition **(# 1)** seeking to enforce the summons.

The Court referred the matter to the Magistrate Judge for a recommendation as to the merits of the Petition.  On March 19, 2019, the Magistrate Judge issued a thorough Recommendation **(# 17)** that the Petition be granted.  Specifically, the Magistrate Judge found: (i) that the IRS had adequately made a *prima facie* showing that the summons should be enforced, insofar as the record demonstrated that the investigation of Mr. Matkari was for a legitimate purpose, that the information requested by the IRS was relevant to that investigation, that the IRS did not already have the requested records in its possession, and that the IRS had followed the necessary administrative steps; (ii) that Mr. Matkari's Fifth Amendment privilege against self-incrimination was implicated by the summons; (iii) that the Required Records Exception applied to overcome Mr. Matkari's Fifth Amendment privilege because the IRS' inquiry was "essentially regulatory," the records requested are of a type "customarily kept" by individuals, and the requested records have a "public aspect" to them; and (iv) that Mr. Matkari had not adequately raised any arguments about whether the IRS' request for his testimony (rather than the production of documents) presented Fifth Amendment issues, such that the court was not required to consider that issue.

Mr. Matkari filed timely Objections **(# 20)** to the Recommendation.  Specifically, Mr. Matkari contends: (i) the IRS' investigation is not for a legitimate purpose because Ms. Styron's working group "frequently supports" the IRS' criminal investigation section, such that Ms. Styon "is either working to develop a case for referral to [the criminal investigation section] or, in the alternative is working jointly with a [criminal investigator] on an already existing, but to date undisclosed, criminal investigation targeting Mr. Matkari; (ii) that the Magistrate Judge erred in concluding that the IRS' inquiry was "essentially regulatory" because the area of the IRS' inquiry – examination of individuals reporting Foreign Bank and Financial Account Records

("FBARs") -- is "permeated with criminal statutes" and because the inquiry is "aimed at a highly selective group inherently suspect of criminal activities"; (iii) that the Magistrate Judge erred in relying on numerous Circuit Court decisions in prior cases because these decisions "simply fall in line with the cases decided before them" and because the decisions "provide a number of examples of issues for decision that could have gone either way"; (iv) the Magistrate Judge erred in distinguishing *U.S. v. Porter*, 711 F.2d 1397 (7th Cir. 1983), a case in which the court refused to direct enforcement of a summons because it found that the requested records lacked a "public aspect"; (v) that the Court should "forego ordering Mr. Matkari's live testimony" because of his age and infirmities, "or allow counsel to appear in his stead."

## ANALYSIS

### A.  Standard of review

The Court reviews the objected-to portions of the Recommendation *de novo*.  Fed. R. Civ. P. 72(b).

### B.  IRS' *prima facie* case

Mr. Matkari has not objected to the analytical framework articulated by the Magistrate Judge, and in the absence of such objection, the Court finds that framework sound and adopts it herein.  The IRS bears the initial burden of demonstrating a *prima facie* case by showing a legitimate purpose, relevance of the summons to that purpose, that the requested records are not already in possession of the IRS, and that the IRS has followed the required administrative steps. *U.S. v. Powell*, 379 U.S. 48, 57-58 (1964).  The Magistrate Judge found that the IRS had demonstrated all four of these elements.

Mr. Matkari's Objections address only the first element: whether the IRS has a legitimate investigatory purpose in requesting the documents.  In this regard, Mr. Matkari makes a largely

speculative argument: that there <u>may</u> be an ongoing criminal investigation into Mr. Matkari and that the records Ms. Styron requests as part of this civil enforcement action <u>could be</u> used to further that criminal investigation.  Mr. Matkari does not, and presumably cannot, affirmatively assert that there <u>is</u> a criminal investigation underway; indeed, Mr. Matkari's Objections concede that he "did not directly argue in his response that the IRS' exmination activity was being conducted for an impermissible purpose."  Rather, Mr. Matkari appears to be content to simply posit (without supporting evidence) that "IRS Revenue Agents (civil side employees) are often, simply, well-camouflaged" criminal investigators, and therefore assume that Ms. Styron <u>must</u> be assisting a criminal investigation involving Mr. Matkari.  Because Mr. Matkari offers nothing more than sheer speculation on this point, the Court finds that he has failed to rebut the showing by Ms. Styron that her investigation is strictly civil in nature.  Thus, Mr. Matkari's contention that the Magistrate Judge erred in finding that the IRS had a legitimate purpose for the investigation is without merit.

### C.  The Required Records Exception

Mr. Matkari does not object to the Magistrate Judge's finding that requiring him to comply with the summons and produce records implicates his privilege against self-incrimination under the Fifth Amendment to the U.S. Constitution.  Nor does Mr. Matkari object to the Magistrate Judge's observation that the Required Records Exception, if properly invoked, operates to overcome a taxpayer's Fifth Amendment objection to producing requested documents.  That exception provides that "records required by law to be kept in order that there may be suitable information of transactions which are the appropriate subject of government regulation" may not be shielded from production through the invocation of the Fifth Amendment.  *Shapiro v. U.S.*, 335 U.S. 1, 33 (1948). Accordingly, the Court adopts that portion

of the Recommendation that sets forth the reasons and elements of the Required Records Exception.  To establish the application of the Required Records Exception, the IRS has the burden to show: (i) that the purpose of the IRS' inquiry is "essentially regulatory," (ii) that the information being requested is "of a kind which the regulated party has customarily kept," and (iii) that the records themselves "have assumed 'public aspects' which render them at least analogous to public documents."  *Grosso v. U.S.,* 390 U.S. 62, 67-68 (1968).

Mr. Matkari first objects to the Magistrate Judge's finding that the IRS' request for his records was "essentially regulatory."  Mr. Matkari does not dispute that *In re M.H.*, 648 F.3d 1067, 1073 (9th Cir. 2011) provides the proper test for determining whether a request is essentially regulatory: a three-part inquiry as to whether the request "involves an area 'permeated with criminal statutes'," whether it is "aimed at a highly-selective group inherently suspect of criminal activities," and whether complying with the request "would generally prove a significant 'link in a chain' of evidence tending to establish guilt."  Mr. Matkari's arguments on these elements are largely superficial.  He asserts that the IRS' request involves an area permeated with criminal statutes because "we have a collection of all of the criminal penalties contemplated by 31 U.S.C. 5322 <u>plus</u> all of the derivative criminal tax sanctions that foreign bank account activity can unearth i.e. Title 26 Subtitle F, Chapter 75 United States Code, <u>plus</u> the 18 U.S.C. 1956 and 1957 money laundering statutes, to name a few."

The IRS' request cites to 31 C.F.R. § 1010.420 as its source.  That regulation requires persons having a financial interest in financial accounts in foreign countries to maintain certain records regarding those accounts, and to produce those records for inspection by the IRS upon demand.  Numerous cases, including *In re M.H.*, have rejected the argument Mr. Matkari makes here.  In *M.H.*, referring to the statute enabling 31 C.F.R. § 1010.420, the Bank Secrecy Act

("BSA"), 31 U.S.C. § 5311, the taxpayer argued that the regulation "is criminal in nature because the BSA's primary purpose is to detect criminal conduct, specifically money laundering, terrorism, and tax evasion." The *M.H.* court found that the BSA has dual purposes: that Congress was "equally concerned" with both preventing criminal money laundering and tax evasion, as well as "civil liability which might go undetected by reason of transactions of the type required to be recorded or reported." 648 F.3d at 1074. *M.H.* found that this dual purpose "is insufficient to render the BSA essentially criminal as opposed to essentially regulatory." Mr. Matkari offers no particular argument as to why this conclusion in *M.H.* was incorrect or why this Court should not choose to follow it.[1] This Court agrees that although the BSA may be used to discover and criminally prosecute financial crimes in extreme cases, it is equally (if not more) effective as a regulatory tool to ensure that a far greater number of law-abiding taxpayers are correctly reporting and paying any taxes they owed. *See M.H.*, 648 F.3d at 1075 ("there is nothing inherently illegal about having . . . an offshore foreign banking account," that over half a million taxpayers had such accounts in 2009, and that "nothing about having a foreign bank account on its own suggests a person is engaged in illegal activity"). Accordingly, the Court finds that the IRS has demonstrated that the regulation's purpose is essentially regulatory.

Similarly, the Court rejects Mr. Matkari's argument that the regulation is aimed at a "highly-selective group inherently suspect of criminal activities." Mr. Matkari argues that only .007% of 2014 taxpayers reported foreign bank accounts; he argues (but does not cite to any specific evidence) that the IRS disproportionately audits such filers, belying the contention that

---

[1]   At most, Mr. Matkari argues that *M.H.* "could have gone the other way" and concluded that the regulation in question was <u>not</u> sufficiently regulatory in nature. Arguing that a particular decision <u>could have</u> been made differently does not persuade this Court that it was made <u>incorrectly</u>.

foreign account holders are not a "highly-selective group" in the IRS' eyes.  As noted above, *M.H.* rejected the argument that mere ownership of a foreign bank account was "inherently suspect," and this Court agrees.  Mr. Matkari's argument acknowledges that some 1.16 million 2014 taxpayers reported holding such foreign accounts, yet there is no suggestion that the IRS suspected that all or even most of these 1.16 million taxpayers might be engaged in criminal activity.  Thus, the IRS has demonstrated that the regulation does not target a selective group believed to be inherently suspect of criminal activity.

Finally, Mr. Matkari posits that production of his foreign account records would provide a "link in a chain" of evidence that could be used to convict him of criminal conduct.  *M.H.* rejected this argument as well, explaining that because the ownership of a foreign bank account is "not inherently criminal," requiring Mr. Matkari to produce information about such an account "would generally not establish a significant link in a chain of evidence tending to prove guilt." 648 F.3d at 1075.  *M.H.* cogently points out that "it is the act of not reporting . . . the information that suggests criminality, not the information itself.")  Because Mr. Matkari offers nothing that addresses, much less rebuts, *M.H.*'s persuasive analysis on this point, the Court rejects Mr. Matkari's argument.  Thus, the IRS has demonstrated that the regulation that supports the IRS' request is "essentially regulatory, satisfying the first of the Required Records Exception.

Mr. Matkari does not offer any arguments challenging the Recommendation's conclusion that the IRS established the second element of the Exception – that the records are "customarily kept" by the taxpayer.  There being no objection, the Court adopts the Magistrate Judge's findings on this point.  Thus, the Court turns to the final element, whether the records have assumed "public aspects" that render them analogous to public documents.  The Magistrate Judge cited several cases, including *In re Grand Jury Subpoena Dated Feb. 2, 2012*, 741 F.3d at

339, 351 (2d Cir. 2013), which examined the BSA and its supporting regulations in this context

and concluded that records of foreign bank accounts – records that "a statute lawfully requires a

person to record" (as distinguished from "information that no statute lawfully requires anyone to

record") has a public character insofar as "it need only be lawfully required to be kept."  Mr.

Matkari argues that the Court should instead follow *U.S. v. Porter*, 711 F.2d 1397 (7th Cir. 1983).

There, the IRS was investigating a taxpayer's reporting of revenue from a hair salon.  The IRS

requested an array of business records, including cancelled checks, deposit slips, and

appointment books, and the taxpayer refused to provide them, citing his Fifth Amendment

privilege.  Considering the Required Records Exception, the court concluded that items such as

cancelled checks and deposit slips, although arguably encompassed by general IRS regulations

requiring taxpayers to retain records "sufficient to establish the amount of gross income [and]

deductions," were not the type of documents that were "positively regulated by the IRS" as

contemplated by the Supreme Court's *Shapiro* opinion.  Distinguishing the cancelled checks and

deposit slips from the transaction records in *Shapiro* that the Emergency Price Control Act

required affected taxpayers to keep, the court explained that "a sole proprietor's checks and bank

transactions are inspected by revenue authorities only in the unusual situation of an audit."

Because the IRS "rarely attempted access" to such documents, the court found that this failed to

"transform[ ] the gamut of an individual businessman's financial records into an extension of the

public archives."  711 F.2d at 1405.  Thus, the court found that the requested records were not

subject to an exemption from the taxpayer's Fifth Amendment privilege.  Mr. Matkari argues

here that "there is no meaningful distinction" between "the 'regular' taxpayer required to keep

books & records" (as in *Porter*) and "a 'regular' taxpayer who also has a foreign bank account

and is also required to produce those records."

This Court agrees with the Magistrate Judge that *In re Grand Jury Subpoena*, and not *Porter*, provides the appropriate analytical framework.  The foreign bank account records requested from Mr. Matkari are not the sort of routine, everyday business records that every proprietor collects, and which are governed only by IRS regulations that generally obligate taxpayers to retain relevant records.  Rather, as in *Shapiro*, the foreign account records are the subject of specific IRS regulations, enacted pursuant to a specific statutory scheme.  This Court agrees with *In re Grand Jury Subpoena* that the IRS' promulgation of a specific regulatory regime concerning this specific category of documents suffices to cloak the requested documents with a public character, in a way that documents that are only responsive to a generalized, all-encompassing command to retain generically-relevant documents does not.  Thus, the Court agrees with the Magistrate Judge that *Porter* is distinguishable on its facts.

Accordingly, the Court finds that the IRS has adequately demonstrated that the Required Records Exception overcomes Mr. Matkari's invocation of his Fifth Amendment privilege and that it is appropriate to enforce the IRS subpoena.

**D.  Mr. Matkari's testimonial privilege**

The Recommendation understood Mr. Matkari to be arguing that, separate from his production of financial records, the IRS subpoena should be quashed to the extent that it commands him to appear and answer questions about his foreign bank accounts.  But the Magistrate Judge declined to consider that argument because Mr. Matkari had not meaningfully presented it.

In his Objections, Mr. Matkari's counsel concedes that he was "somewhat less than clear about why Mr. Matkari should not be required to appear and personally testify pursuant to the Summons."  He goes on to explain that Mr. Matkari would similarly invoke his Fifth

Amendment privilege to refuse to testify about his foreign bank accounts, and that the analysis above regarding the Required Records Exception does not resolve the question of whether his testimony can be compelled alongside his records.  He appears to request that this Court "forego ordering Mr. Matkari's live testimony, or to allow counsel to appear in his stead."  But he offers no meaningful explanation as to why such a ruling should be justified on any Fifth Amendment grounds.  Rather, Mr. Matkari's sole substantive argument on this point is that he is elderly (79 years old) and in poor health, and thus, it would be needlessly burdensome to command him to appear in person as commanded by the IRS, simply for the purpose of him then invoking his Fifth Amendment rights.

Reading Mr. Matkari's Objections carefully, this Court finds that Mr. Matkari has not asked the Court to make a preliminary determination as to whether Mr. Matkari may invoke his Fifth Amendment right to avoid testifying in response to the IRS subpoena.  Rather, it simply appears that Mr. Matkari has already concluded that he will do so.  What he asks of the Court is that, given his intention to refuse to give any oral testimony beyond identifying himself and invoking his Fifth Amendment rights, that the Court relieve him of the obligation of appearing at all, due to his age and health condition.  The Court declines to do so.

The Court will not presuppose that all questions the IRS might pose to him would give rise to Fifth Amendment concerns, and, even if they do, the Court will not necessarily assume that Mr. Matkari (presumably aided by the advice of his counsel) will necessarily persist in his decision to invoke that privilege.  Certainly, the IRS is now well-informed of Mr. Matkari's intention (and health condition) and, if it deems appropriate, it might elect to waive Mr. Matkari's presence or seek some other method of obtaining his testimony.  But that is a decision for the IRS, not the Court, to make.  Accordingly, to the extent Mr. Matkari requests that the

Court quash, on health-related grounds, the IRS' command that Mr. Matkari appear personally to give testimony, the Court denies that request.

### E.  Narrowing the range of the summons

Finally, Mr. Matkari briefly argues that the Court should narrow the range of the IRS' subpoena to seeking 5 years of records as measured from the date of the subpoena (in 2018), and that the Court should quash the subpoena to the extent it requests records from even earlier periods.  Mr. Matkari did not present this argument in prior briefing in this matter.  Although Fed. R. Civ. P. 72(b)(3) permits the Court to receive additional evidence or consider newly-raised arguments at the Objections stage, the Court declines to do so here.  Mr. Matkari's late-breaking argument regarding the scope of the subpoena is not supported by meaningful analysis or citation to authority.  Thus, the Court declines to reach this issue (and similarly declines to reach the "foregone conclusion doctrine," which the IRS invokes in response).

<u>CONCLUSION</u>

For the foregoing reasons, Mr. Matkari's Objections **(# 20)** are **OVERRULED**.  The Magistrate Judge's Recommendation **(# 17)** is **ADOPTED** in its entirety.  The IRS' Petition to Enforce the Subpoena **(# 1)** is **GRANTED**, and Mr. Matkari shall comply with the subpoena within 21 days of this Order or at such time and under such conditions as may be mutually agreed to by the parties.

Dated this 31st day of December, 2019.

**BY THE COURT:**

Marcia S. Krieger
Senior United States District Judge